## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| JOANN INC., *et al.*,[1] | ) | Case No. 25-10068 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| JOANN INC., *et al.*, [2] | ) | Adversary No. 25-51022 (CTG) |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| ADVANTUS, CORP., FAIRFIELD PROCESSING CORP., GWEN STUDIOS, LLC, LOW TECH TOY CLUB, LLC, ORMO ITHALAT IHRACAT A.S., SPRINGS CREATIVE PRODUCTS GROUP, LLC., | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEBTORS' MOTION TO (I) ENFORCE THE AUTOMATIC STAY; (II) ENFORCE THE SALE ORDER; AND (III) FOR A PRELIMINARY INJUNCTION PURSUANT TO SECTIONS 105(A) AND 362(A) OF THE BANKRUPTCY CODE

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state

as follows in support of this motion:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: JOANN Inc. (5540); Needle Holdings LLC (3814); Jo-Ann Stores, LLC (0629); Creative Tech Solutions LLC (6734); Creativebug, LLC (3208); WeaveUp, Inc. (5633); JAS Aviation, LLC (9570); joann.com, LLC (1594); JOANN Ditto Holdings Inc. (9652); Dittopatterns LLC (0452); JOANN Holdings 1, LLC (9030); JOANN Holdings 2, LLC (6408); and Jo-Ann Stores Support Center, Inc. (5027). The Debtors' mailing address is 5555 Darrow Road, Hudson, Ohio 44236.

[2] The Plaintiffs in this adversary case are the Debtors listed in footnote one.

## <u>PRELIMINARY STATEMENT</u>

1.     The automatic stay is one of the fundamental debtor protections provided by the Bankruptcy Code.[3]  It ensures that similarly situated creditors receive equal treatment through the bankruptcy process and discourages creditors from a race to the courthouse in the hopes that the earliest creditor to lodge a complaint will receive a preferential outcome on its claim.  Rather than abide by these basic bankruptcy tenets, the Defendants in this action (hereinafter, the "Ohio Plaintiffs")—which include a handful of unsecured creditors, a number of whom serve on the Official Committee of Unsecured Creditors (the "UCC") (which was actively and constructively negotiating the Plan with the Debtors at the time)—have initiated litigation in Ohio state court attempting to recover on the very same claims they are asserting in this bankruptcy (the "Ohio Action").  Such open defiance of the automatic stay should not be permitted, and the Ohio Plaintiffs should not be able to pursue the Ohio Action.

2.     The Debtors are weeks away from plan confirmation.  The Plan will deliver value, including to the unsecured creditors.  Rather than receive that value in accordance with the Plan and Bankruptcy Code, the Ohio Plaintiffs sought to skip the line and circumvent the claims reconciliation process by commencing the Ohio Action, which alleges that the "Ohio Defendants," a group of former officers and directors of Joann, made prepetition misrepresentations in their official capacity as officers or employees of Joann.  As such, though the Ohio Plaintiffs dress their litigation up as claims against the Debtors' officers and directors, they are actually claims against the Debtors.  Tellingly, the Ohio Plaintiffs have already filed claims in these chapter 11 cases for functionally the identical amount they are claiming as damages in the Ohio Action.  At bottom,

---

[3]     Unless otherwise defined, defined terms have the meaning proscribed to them in the Debtors' Adversary Complaint.

the Ohio Action is an attempt to reach assets of the Debtors outside of the chapter 11 process and outside of the authority of the Bankruptcy Court, and this is exactly the type of maneuvering that the Automatic Stay seeks to prevent.

3.      Given the nature of the claims being asserted in the Ohio Action, it cannot proceed without a direct impact to the Debtors and the Debtors' assets because it is *about* the Debtors. These circumstances justify enforcing the Automatic Stay as to the Ohio Action.  Without a clear directive that the Automatic Stay applies to the Ohio Action, there is a risk that creditors will continue to sidestep the claim reconciliation process and undermine the Debtors' efforts to confirm a plan.

4.      If allowed to proceed, the Ohio Action: (i) will have the effect of being an action against the Debtors themselves; (ii) may interfere with, and impair the Debtors' efforts to successfully complete these chapter 11 cases and administer claims; and (iii) will unfairly allow the Ohio Plaintiffs to jump the line and recover assets that might otherwise be available to the Debtors' estates for the benefit of all stakeholders.

5.      As such, the Debtors seek an order enforcing the Automatic Stay or, as applicable, the Sale Order and enjoining further prosecution of the Ohio Action.  Alternatively, the Debtors seek the issuance of a preliminary injunction enjoining further prosecution of the Ohio Action until such time as the Court may determine whether the claims brought in the Ohio Action are properly claims against the Debtors or derivative claims that were sold pursuant to the Sale Order.

## FACTUAL BACKGROUND

6.      On January 15, 2025, JOANN and certain of its affiliates filed voluntary petitions for relief under Title 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").  Compl. ¶ 17.  The Debtors are operating their

business and managing their property as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code.  As a matter of law, the commencement of a bankruptcy case results in the imposition of an automatic stay that acts as an injunction against all parties from taking certain actions against debtors.  11 U.S.C. § 362(a)(3) (the "Automatic Stay").  The Automatic Stay is still in effect.  Compl. ¶ 18.

7.     Following a marketing process and auction, the Debtors entered into an agency agreement with GA Joann Retail Partnership, LLC, and the Prepetition Term Loan Agent (the Purchaser") for the right to liquidate substantially all of the Debtors' assets (the "GA Transaction").  Compl. ¶ 19.  Pursuant to the GA Transaction, all of JOANN's estate claims, including derivative claims, were sold to the Purchaser and now are the exclusive property of the Purchaser.  *Id.*  That sale was confirmed by the Bankruptcy Court in the *Order (A) Approving and Authorizing Sale of the Debtors' Assets, Free and Clear of All Liens, Claims, Encumbrances, and other Interests, and (B) Granting Related Relief* [Docket No. 520] (the "Sale Order").  *Id.*  The UCC supported the GA Transaction and the entry of the Sale Order, which also included various provisions incorporating a global settlement of the UCC's objections to the Sale.[4]  *Id.*

8.     Having closed the GA Transaction, the Debtors' primary objective in these chapter 11 cases is to confirm a plan to liquidate the Debtors' estates in an orderly manner and distribute value to stakeholders in accordance with the Bankruptcy Code.  Compl. ¶ 20.  On May 5, 2025, Debtors filed the Disclosure Statement for the Amended Joint Chapter 11 Plan, followed by an amended version on May 24, 2025.  *Id.*  On May 27, 2025, the Bankruptcy Court conditionally

---

[4]     *See* Feb. 26, 2025 Sale Hearing Tr., *In re JOANN Inc., et al.,* No. 25-10068 (CTG), ECF No. 565, at 7:14–17 ("We, over the course of the last 24 hours, 24 to 36 hours, have reached global consensus across the capital structure with the pre-petition ABLs, the pre-petition FILOs, the term lenders, the UCC, and the debtors."); *Id.* at 10:12 – 12:08 (describing UCC settlement).

approved the adequacy of the Disclosure Statement.  *Id.*  The Bankruptcy Court's combined hearing to consider confirmation of the Plan and final approval of the Disclosure Statement will be held on July 10, 2025.  Compl. ¶ 21.

9.    On May 15, 2025, the Ohio Plaintiffs filed a complaint in the Court of Common Pleas in Summit County, Ohio (the "Ohio Action").  Compl. ¶ 22, Ex. A.  The Complaint asserts causes of action against the Debtors' current or former officers and employees (the "Ohio Defendants") for actions taken in their official capacity as employees and officers of JOANN, Inc.  Compl. ¶¶ 22–23.  The Ohio Action challenges alleged misrepresentations made by the Ohio Defendants in their official capacities in the months leading up to the Petition Date that purportedly misled the Ohio Plaintiffs into providing product and extending credit to JOANN that JOANN would ultimately be unable to honor as a result of its bankruptcy filing.  Compl. ¶ 23.  These alleged misrepresentations involved the financial health and stability of JOANN prior to its bankruptcy filing, and the Ohio Plaintiffs fundamentally fault JOANN for facing financial hardship that ultimately led it to seek the protection of the chapter 11 process.  *Id.*  The Complaint attempts to lay responsibility for the loss suffered by the Ohio Plaintiffs at the feet of officers and employees of JOANN simply for carrying out their jobs (putting aside the many false and overstated allegations of the Ohio Plaintiffs).

10.    Nowhere do the Ohio Plaintiffs allege that the Ohio Defendants deviated from their duties as JOANN officers.  Compl. ¶ 24.  Instead, the Ohio Plaintiffs reiterate that their harms result directly from their decisions to continue business with JOANN based on business dealings with JOANN's employees; they do not allege anywhere that any harm resulted from the actions of the Ohio Defendants as individuals, and instead allege only that the actions were taken in connection with their roles and responsibilities with JOANN.  *Id.*  The Ohio Plaintiffs also do not

allege that these individuals sought personal gain from their alleged conduct, which only further reinforces that the Ohio Defendants were acting solely as representatives of JOANN. *Id.* The harm the Ohio Plaintiffs claim is against their business, and they allege that it was because their employees were led to believe that JOANN would be able to pay what was owed. Compl. ¶ 25. Any one of the creditors who agreed to supply JOANN during this period of time but were ultimately not paid due to JOANN's financial difficulties would have the same claim. *Id.*

11.     On June 13, 2025, the Debtors filed an adversary proceeding pursuant to sections 105(a) and 362(a) of the Bankruptcy Code, Rule 7001(7) of the Bankruptcy Rules, and Rule 65 of the Federal Rules of Civil Procedure, made applicable hereto by Bankruptcy Rule 7065, seeking: (i) a declaration that the Ohio Action and the claims asserted in the Ohio Action violate the automatic stay under section 362(a) of the Bankruptcy Code because they are claims against the Debtors; (ii) a declaration that the Ohio Action and the claims asserted in the Ohio Action violate the Sale Order because they are derivative estate claims; and, alternatively, (iii) injunctive relief under section 105(a) of the Bankruptcy Code and/or Bankruptcy Rule 7065 to enjoin the above-captioned Ohio Plaintiffs from continuing prosecution of the Ohio Action. Compl. ¶ 1. To be clear, the Debtors are not seeking any relief in violation of *Harrington v. Purdue Pharm L.P.*, 144 S. Ct. 2071 (2024). Compl. ¶ 3. Ultimately, if the Court determines that the claims in the Ohio Action are not claims against the Company or derivative claims purchased pursuant to the Sale Order, the Debtors and the Ohio Defendants will address the merits of the claims in the appropriate non-bankruptcy forum. *Id.*

12.     The Debtors seek an order, after notice and a hearing, (i) enforcing the Automatic Stay; (ii) enforcing the Sale Order; or (iii) preliminarily enjoining the Ohio Action until such time as the Court can determine whether the claims in the Ohio Action are direct claims subject to the

Automatic Stay and/or derivative claims that cannot be brought by the Ohio Plaintiffs as a result of the Sale Order.  Compl. ¶ 1.  The relief sought herein is critical to preventing a select group of unsecured creditors from undermining the protections of chapter 11 of the Bankruptcy Code and the claims reconciliation process.

## ARGUMENT

**I.    THE OHIO ACTION IS BARRED BY THE AUTOMATIC STAY OR THE SALE ORDER.**

13.    The claims asserted in the Ohio Action are either direct claims against JOANN and barred by the Automatic Stay or derivative claims that vested in JOANN's estates and were sold pursuant to the Sale Order.  Under either circumstance, the Ohio Action cannot proceed and the Court should enter an order enforcing the Automatic Stay or Sale Order and, as necessary, issue an injunction pursuant to section 105(a) of the Bankruptcy Code enjoining further prosecution of the Ohio Action as a violation of the Automatic Stay or Sale Order.

**A.    The Claims in the Ohio Action Are Direct Claims Against JOANN and Subject to the Automatic Stay.**

14.    The claims in the Ohio Action are merely disguised direct claims against JOANN, brought in an attempted end-run around the Automatic Stay.  Such claims are subject to the Automatic Stay.

15.    Section 362 of the Bankruptcy Code provides that the Debtors' voluntary chapter 11 petition:

> operates as a stay, applicable to all entities, of—
>
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

[…]

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; [and]

[…]

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. §§ 362(a)(1), (3), and (6).

16.     The Automatic Stay is crucial to allow the Debtors "breathing space" from their creditors during bankruptcy.  *See, e.g.*, *Borman v. Raymark Indus., Inc.*, 946 F.2d 1031, 1033 (3d Cir. 1991) (describing automatic stays as a means to provide a debtor "breathing space" from its creditors, so that it might "attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove [it] into bankruptcy").  Section 362(a) indisputably stays litigation against the Debtors.  *Const. Bank v. Tubbs*, 68 F.3d 685, 691 (3d Cir. 1995).

17.     The Automatic Stay "is self-executing, effective upon the filing of the bankruptcy petition."  *In re THG Holdings LLC*, 604 B.R. 154, 162 (Bankr. D. Del. 2019) (quoting *Gruntz v. County of Los Angeles*, 202 F.3d 1074, 1081–82 (9th Cir. 2000)).  Section 105(a) of the Bankruptcy Code nevertheless grants this Court the broad authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. § 105(a); *see also In re LTL Mgmt., LLC*, 638 B.R. 291, 319 (Bankr. D.N.J. 2022) (section 105(a) grants authority to issue an injunction) (internal citations omitted).  Such relief is appropriate here.

### 1.     The Ohio Plaintiffs Facially Fail to Plead Claims Against the Ohio Defendants—Instead Pleading Direct Claims Against JOANN.

18.     By asserting that the Ohio Defendants engaged in the acts alleged in the Complaint in their *official* capacities, (*see* Compl. ¶ 22) and that such acts were taken pursuant to contractual arrangements between the Ohio Plaintiffs and JOANN, the Ohio Plaintiffs are doing nothing more

than claiming that they were harmed by the acts of JOANN under the guise of claims against the Ohio Defendants.

19.     The Ohio Plaintiffs are attempting to assert breach of contract claims that they possess against JOANN—and for which they have filed claims in these chapter 11 cases—as claims of fraudulent inducement and negligent inducement/misrepresentation against the Ohio Defendants.  But where, as here, the crux of a plaintiff's claim is that the debtor failed to pay a contractual debt owed to them, such claim is barred by the Automatic Stay, even if brought against the debtor's officers and directors.  *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 439–40 (S.D.N.Y. 1993), *aff'd,* 17 F.3d 600 (2d Cir. 1994).  The Ohio Plaintiffs' fraudulent inducement and negligent misrepresentation claims are no different.

20.     As a general matter, parties may not use claims of improper inducement "to function as a blanket insurance policy for anything that can go wrong in a contractual relationship, and it may not be used as a means of restating what is, in substance, a claim for breach of contract."  *Netto v. Rastegar*, 2012 WL 4336167, at *5 (S.D.N.Y. Sept. 20, 2012) (quoting *Wall v. CSX Transp., Inc.,* 471 F.3d 410, 415–16 (2d Cir. 2006) (internal quotation marks omitted)).  "General allegations that defendant entered into a contract while lacking the intent to perform it are insufficient to support [a fraud] claim."  *Id.*; *see also PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 491–92 (S.D.N.Y. 2017) (alleged false statements regarding an intent to perform under a contract fails to state a claim of fraud).  This is precisely the strategy being attempted by the Ohio Plaintiffs—they are seeking to convert their contract claims and contract damages against JOANN into claims against directors and officers to get around the Automatic Stay and claims reconciliation process.

21.     In order to maintain a fraudulent inducement claim against an individual employee in the face of a clear contractual relationship with the employer entity, a plaintiff must do one of the following: "(i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996) (internal citations omitted).[5]  The Ohio Plaintiffs make none of these showings, revealing their claims to be nothing more than disguised claims against JOANN based on the parties' contractual supply relationship.

22.     First, the Ohio Plaintiffs fail to allege that the Ohio Defendants had some special duty to them apart from what would have been set forth in the Ohio Plaintiffs' contracts or agreements with JOANN.  *See Netto v. Rastegar*, 2012 WL 4336167, at *6 (failure to plead any special relationship apart from contractual relationship with debtor entity is fatal to fraudulent inducement claim).   Second, they fail to allege that any of the Ohio Defendants made representations outside of the scope of the contractual relationship that the Ohio Plaintiffs had with JOANN.  *See id*.  Third, the Ohio Plaintiffs also fail to allege any special damages that could not be recovered under a contract action—and thus through the claims process here.  *See id*.  The Ohio Plaintiffs allege certain amorphous and at times nominal "incidental damages" but do not allege that they could not be recovered in a contract action against the Debtors (or that they were not waived in such supply agreements).

---

[5]     The Ohio Plaintiffs allege claims under various state laws, including Florida, Connecticut, Ohio, South Carolina, and North Carolina.  JOANN has not seen any caselaw suggesting the law of those jurisdictions—if in fact applicable, which JOANN does not concede—differs from the law set forth herein.

23.     Because the foregoing pleading failures reveal the Ohio Action to be a transparent attempt to circumvent the claims reconciliation process and sidestep the Automatic Stay, the Ohio Action should not be permitted to proceed.

**2.     JOANN Is the Real Party Defendant to the Ohio Action.**

24.     Bankruptcy courts have also recognized that the automatic stay applies to actions nominally brought against third parties where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *McCartney v. Integra Nat'l Bank North*, 106 F.3d 506, 510 (3d Cir. 1997) (quoting *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir.), *cert. denied*, 479 U.S. 876 (1986)); *see also In re Phila. Newspapers, LLC*, 423 B.R. 98, 104 (E.D. Pa. 2010) (accord).

25.     Here, JOANN is the real party in interest in the Ohio Action.  The claims against the Ohio Defendants refer solely to actions that the Ohio Defendants allegedly took on behalf of JOANN, as employees and in their official capacities.  Corporations can only act through their employees or agents; and with such a relationship, "any judgment against the third-party [nondebtor] will in effect be a judgment or finding against the [D]ebtor." *McCartney*, 106 F.3d at 510 citing *A.H. Robins Co.*, 788 F.2d at 999 (noting that 11 U.S.C. § 362(a)(3) stays "any action, *whether against the debtor or third-parties*, to obtain possession or to exercise control over property of the debtor") (emphasis original)).

26.     By allowing the Ohio Action to proceed, the unique identity of interests between JOANN and the Ohio Defendants poses the risk of collateral estoppel that would prejudice the claims administration and reconciliation process to the detriment of all other creditors.  The Ohio Action proceeding against the Ohio Defendants in their "official" capacities will "expose[] [JOANN] to both vicarious liability under the doctrine of respondeat superior . . . and the risk of

being collaterally estopped from denying liability for its directors' actions." *In re Am. Film Tech. Inc.*, 175 B.R. 847, 850 (Bankr. D. Del. 1994) (listing cases) (internal citations omitted). Alternatively, the unique identity of interests could result in a double recovery to the Ohio Plaintiffs, who have all filed claims in these chapter 11 cases for the same amounts they are seeking in the Ohio Action.[6]  Any amounts recovered in the Ohio Action could be passed back to the Debtors in the form of indemnification claims by the Ohio Defendants.

27.    To avoid the risk of collateral estoppel or double recovery in the claims administration process, the Debtors will be forced to "participate in the defense of the state court case" and "do precisely what the automatic stay is intended to excuse it from doing." *In re Am. Film Tech. Inc.*, 175 B.R. at 851, 855 (granting a preliminary motion to enjoin defendants from prosecuting a state action against then-president and manager); *see also In re Lomas Fin. Corp.*, 117 B.R. 64, 67 (S.D.N.Y. 1990) ("It is not possible for the debtor to be a bystander to a suit which may have a $20 million issue preclusion effect against it in favor of a pre-petition creditor.") (internal citations and quotations omitted).  The Automatic Stay is in place to avoid precisely that result.

28.    The Court should enter an order affirming that the Automatic Stay applies to the Ohio Action and, for the avoidance of doubt, issue an injunction pursuant to section 105(a) of the Bankruptcy Code enjoining further prosecution of the Ohio Action.

**B.     To the Extent the Claims in the Ohio Action Are Not Direct Claims Against JOANN, They Are Derivative Claims and Have Been Sold Pursuant to the Sale Order.**

29.    To the extent the Ohio Plaintiffs have any legally coherent claims against the Ohio Defendants in their individual, non-official capacity based upon the facts alleged in the Ohio

---

[6]    The exception are certain "incidental damages" that are unexplained and unsubstantiated.

Action, such claims are derivative claims that were property of JOANN's estates and sold to the Purchaser pursuant to the Sale Order. While the Ohio Plaintiffs have disavowed that their claims are derivative, and JOANN believes that the claims in the Ohio Action are actually direct claims against JOANN, any alternative characterization of the claims would still bar the Ohio Plaintiffs from pursuing those claims.[7] Section 105(a) of the Bankruptcy Code authorizes the Court to issue orders, including injunctions, enforcing its final orders, such as the Sale Order. 11 U.S.C. § 105(a).

30.      Under Section 541 of the Bankruptcy Code, derivative claims are estate property. *In re RNI Wind Down Corp.*, 348 B.R. 286, 293 (Bankr. D. Del. 2006), *subsequently aff'd*, 359 F. App'x 352 (3d Cir. 2010) (holding that derivative actions are property of the estate under section 541 and the right to bring such claims vests exclusively in the estate). Although disavowed in the Ohio Action, to the extent the Ohio Plaintiffs are attempting to state claims against the Ohio Defendants for the demise of JOANN and the effects thereof—including JOANN's nonpayment of amounts due to the Ohio Plaintiffs and all vendors—such claims are solely derivative.

31.      The allegations in the Ohio Action, at their core, are claims common to all creditors. As a result, they are derivative claims vested in JOANN's estates. *See In re Emoral, Inc.*, 740 F.3d 875, 879 (3d Cir. 2014). The relevant inquiry to determine whether a claim is common to all creditors is not whether the plaintiffs asserting the claims suffered unique injuries but instead "whether the basis for holding the third party liable is unique to a particular creditor or applies equally to all creditors." *In re Port Neches Fuels, LLC*, 660 B.R. 177, 187 (D. Del. 2024) (quoting *In re TPC Group*, 2023 WL 2168045, at *6 (Bankr. D. Del. Feb. 22, 2023)). While the Ohio

---

[7]      JOANN acknowledges that there are claims that could be brought against third parties, including debtor employees, that are true direct claims and would not be subject to the Automatic Stay or be vested in the estate. It is JOANN's position that the substance of the claims brought in the Ohio Action is such that they cannot be fairly characterized as true direct claims against the Ohio Defendants.

Plaintiffs allege that they were the target of individualized misrepresentations, the core allegation is the same: that JOANN, through its employees, engaged in market-wide misrepresentations regarding its financial health ultimately resulting in its bankruptcy filing.  This is a claim common to all creditors of JOANN and is thus an estate claim.

32.     JOANN's estate claims, including derivative claims of the type set forth above, were sold to the Purchaser and now are the exclusive property of the Purchaser.  The Bankruptcy Court confirmed that sale in the Sale Order.  To that end, any attempt by the Ohio Plaintiffs to pursue claims against the Ohio Defendants that are derivative claims violates the Sale Order.

33.     The Court should enter an order affirming that prosecution of the Ohio Action violates the Sale Order and, for the avoidance of doubt, issue an injunction pursuant to section 105(a) of the Bankruptcy Code enjoining further prosecution of the Ohio Action.

## II.    THE OHIO ACTION SHOULD BE PRELIMINARILY ENJOINED UNDER SECTION 105(A) AND/OR BANKRUPTCY RULE 7065.

34.     This Court can, and should, issue an injunction pursuant to section 105(a) of the Bankruptcy Code enforcing the application of the Automatic Stay to the Ohio Action or, in the alternative, enforcing the Sale Order as precluding any derivative claims brought in the Ohio Action.  Separately, although it is not necessary to the relief sought herein, a preliminary injunction barring further prosecution of the Ohio Action is also warranted.  *See In re THG Holdings LLC*, 604 B.R. at 162 (holding that it is unnecessary "to establish each of the factors necessary to impose a preliminary injunction because the Bankruptcy Code itself establishes the basis for the enforcement of the automatic stay").  Bankruptcy Rule 7065 and Fed. R. Civ. P. 65 empower this Court to issue preliminary injunctions.

35.     To obtain a preliminary injunction, the movant must show: (i) a likelihood of success on the merits; (ii) that it will likely suffer irreparable harm absent preliminary injunctive

14

relief; (iii) that the nonmoving party will not suffer greater harm through the grant of preliminary relief; and (iv) an injunction is in the public interest. *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). All four factors favor injunctive relief here.

      **A.      JOANN Is Likely to Succeed on the Merits of Its Claims That the Ohio Action Is Subject to the Automatic Stay or Barred by the Sale Order.**

36.      For the reasons set forth above, JOANN is likely to succeed on the merits of the claims in the Adversary Proceeding and demonstrate that the claims in the Ohio Action are either direct claims against JOANN and thus subject to the Automatic Stay and claims reconciliation process, or derivative claims barred by the Sale Order.

      **B.      JOANN Will Be Irreparably Harmed in the Absence of Injunctive Relief.**

37.      Without an injunction, the Debtors face irreparable harm as proceedings against the Ohio Defendants threaten to interfere with and potentially damage the Debtors' efforts to liquidate and close out these chapter 11 cases. "[T]he mere risk of a potentially adverse impact on a debtor's bankruptcy can be sufficient to support a preliminary injunction." *In Re LTL Mgmt., LLC*, 640 B.R. 322, 337 (Bankr. D.N.J. 2022). When a debtor's "right to fashion an orderly liquidation may be jeopardized without enjoining [defendants] from proceeding with the [nondebtor third-party] Action," a preliminary injunction is appropriate. *In re SN Liquidation, Inc.*, 388 B.R. 579, 585 (Bankr. D. Del. 2008) (citing *In re Am. Film Tech. Inc.*, 175 B.R. at 849–50). Absent an injunction, the Ohio Action will interfere with the Debtors' ability to administer claims, as the Ohio Action will send a clear signal to creditors that they can functionally refile their claims as complaints at law in courts around the country to the detriment of the claims-reconciliation process.

      **C.      The Balance of Equities Favors Injunctive Relief.**

38.      The balance of the equities strongly favors entering a preliminary injunction until such time as the Court can determine, on a final basis, whether the claims in the Ohio Action are

subject to the Automatic Stay (and, subsequently, the claims reconciliation process) or are barred by the Sale Order.  Without such relief, the Debtors face the risk of a race to the courthouse among creditors seeking to bring claims identical to those in the Ohio Action in an effort to circumvent the claims administration process.  This far outweighs the limited harm that the Ohio Plaintiffs may suffer from being temporarily enjoined from litigating their claims.  Debtors seek only a temporary injunction until the Court can determine the true nature of the Ohio Plaintiffs' claims—not a permanent injunction. *See In re Am. Film Tech. Inc.*, 175 B.R. at 849 (finding the balance of equities and public interest favored granting a preliminary injunction because the motion was to delay prosecuting nondebtor claims, not forgo them).

39.     If there is any doubt as to whether the Ohio Action violates the Automatic Stay or the Sale Order, granting a preliminary injunction will best preserve the sanctity of the bankruptcy process.  Where unclear, "plaintiff's theory that the debtor would not suffer an adverse impact should not be tested at the debtor's peril." *In Re LTL Mgmt., LLC*, 640 B.R. at 337 (citing *In re W.R. Grace & Co.*, 115 F. App'x 565, 570 (3d Cir. 2004)).

**D.    Public Interest Supports Injunctive Relief.**

40.     Public interest favors enforcing the provisions the Bankruptcy Code and the "swift and just resolution of claims against bankruptcy debtors." *In re PTI Holding Corp.*, 346 B.R. 820, 832–33 (Bankr. D. Nev. 2006).  This suit wrongly seeks to circumvent the Automatic Stay and the Bankruptcy Code's established claims resolution processes.

## CONCLUSION

For all the reasons set forth, cause exists to enter an order affirming that the Automatic Stay applies to the Ohio Action or that the Ohio Action is barred by the Sale Order and, alternatively, to enter a preliminary injunction against further prosecution of the Ohio Action, in substantially the form attached to the Motion.

Dated: June 14, 2025
Wilmington, Delaware

*/s/ Michael E. Fitzpatrick*

**COLE SCHOTZ P.C.**
Patrick J. Reilley (No. 4451)
Stacy L. Newman (No. 5044)
Michael E. Fitzpatrick (No. 6797)
Jack M. Dougherty (No. 6784)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone:    (302) 652-3131
Facsimile:    (302) 652-3117
Email:        preilley@coleschotz.com
              snewman@coleschotz.com
              mfitzpatrick@coleschotz.com
              jdougherty@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Aparna Yenamandra, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:        joshua.sussberg@kirkland.com
Email:        aparna.yenamandra@kirkland.com

- and -

Anup Sathy, P.C. (admitted *pro hac vice*)
Jeffrey Michalik (admitted *pro hac vice*)
Lindsey Blumenthal (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        anup.sathy@kirkland.com
              jeff.michalik@kirkland.com
              lindsey.blumenthal@kirkland.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

*Co-Counsel to the Debtors*
*and Debtors in Possession*